We'll take our first case, United States v. Roney. Ms. Albrow. Thank you, your honor. Good morning, may it please the court. I'm Kimberly Albrow here on behalf of the appellant Danny Roney. There is no doubt that the courts construe statutory language strictly. The issue here should be fairly easy to resolve when the plain language of 4243 is applied. 4243 G and F. But most circuits disagree with you, don't they? That is correct, your honor. And they're all wrong. I'll be happy to distinguish those cases. I would start with, I would say that Franklin out of the 8th circuit made it very clear that it's hard, what they said exactly is that it's hard to conclude that imposition of the supervised release conditions that were imposed in that case were part of the treatment regimen per se. So even they recognize that the statute itself does not authorize these type of supervised release conditions in the context of 4243 and 4246. When somebody is put into the institution on the front end, right, so this is the back end, but on the front end, we tend to think that like that institutionalization is part of the treatment. Isn't that right? I mean, that's what we're doing. We institutionalize them as part of the treatment. Once they're found not guilty, they are, if they cannot show that they are not a danger and need continued treatment, they're turned over to the attorney general, so then they are institutionalized to be evaluated by appropriate medical staff. Evaluated and treated, right? The point being is that one of the questions that we're trying to answer here, it seems to me, is what is included within this type of medical or psychiatric treatment, right? And I think we know, based on the broader scope of what's happening here, something like institutionalization is part of the treatment, right? That type of restraint on liberty is a part of the treatment, right? And so the question I've got, and we've seen some other sort of courts that have sort of done this, where they've said like group homes, like placing someone in a group home is part of treatment, right? And so the question I'm getting at, I take your point that it needs to be part of the medical treatment, but why aren't restrictions on liberty that might not involve pharmaceuticals or colloquially lying down on a couch and talking to someone, right? Why aren't those types of liberty restrictions also part of medical treatment? Well, the terms used are prescribed regimen of medical psychiatric and psychological care or treatment. But we know that includes restraints on liberty that are not directly treating the mental illness, right? So like they're related to the treatment, right? But they are not the like administering of the medicines themselves, right? So we don't interpret medical treatment in, I think, the way you want us to read it, which is if it doesn't involve pills or a couch, I know I'm being a little colloquial in that sense, but if it doesn't involve either pills or a couch, it's not treatment. And I don't think we think about it that way in this system where we think about medical psychiatric treatment to include both the pills and the couch, but also restraints on liberty. Why shouldn't I interpret the language to include restraints on liberty that are related to the mental challenges that exist? Well, I would agree that there are certain restraints on liberty that fall within the treatment regimen. For instance, when you said group homes, Mr. Roney was, one of his conditions was that he attend, I think it was Columbia Mental Health. He was to live in a kind of in-house facility, kind of a group home type place. And I do think those were specifically geared toward his medical treatment. I mean, a regimen means a systematic... But a big part of the reason that we put somebody in an institution or in a group home is out of the fear that they're going to harm themselves or others, right? It's a liberty restraint on them. And so it sort of feels like to me that like a lesser liberty restraint, that is, you can't have guns, is also part of that same type of treatment, where we're trying to make sure that they don't hurt themselves or others in the context of like also trying to manage their medicines and also trying to manage their other types of like purely medical treatments. Well, I think it's, you go back to Congress and how they wrote the statute, and all the terms are geared toward more the medical side, the treatment side, the regimen. I understand that you've agreed it includes restraints on liberty, right? Like institutionalization and the like, right? So I totally, I get you could make the argument like treatment does not include restraints on liberty. I understand that argument, right? But you don't seem to want to, like I, if you want to make that argument, I understand. I think it's wrong, but you can make it. But once you accept that it includes restraints on liberty, then why aren't we just talking about what's related to the treatment? So we might not say like having to pay a fine, for example, like that's not part of treatment in any sense of the word. But like this kind of restraint on liberty is. Well, the possession of a gun, in no way, I mean, I don't think under any definition, you could say that's part of his treatment. It's not something that is a systematic plan of some kind of treatment to help his health get better, which is what regimen means. I want to be sure you answer all of Judge Richardson's questions, but to me, I think there's a kind of a condition precedent to that, which I think all of the circuits, except the one that agrees with you, have embraced, which is the term in the statute that says explicit condition of release, necessarily implies there are other conditions that would not necessarily be part of the prescribed regimen. I understand you disagree with that, but I can't think of any universe in which you could explain to someone that a mentally disturbed person who has either avoided prosecution or been committed in lieu of, should be permitted to have a gun. Can you? Well, 922 G4 prohibits someone who's been deemed a mental incompetent from having a gun. The point is, is this statute is geared toward treatment of the mentally ill? It is not, nor was it ever intended to comprehensively cover every potential dangerous situation that someone... It seems like they would have written that section differently if that was the intention, because I can't conceive of any situation where part of the prescribed treatment would include for a mentally deficient person having a firearm. But I think, again, I think this is geared not toward supervised release type conditions, which I think is often confused by the courts, because back in 1974, the Supreme Court issued their Jackson versus Indiana case. It made a very distinct, a very great distinction between someone who has been adjudicated, had their due process rights in front of a jury on criminal charge, versus trying to handle someone who is different because they're mentally incompetent and might need a different kind of treatment. And I think that dangerousness alone is not the only consideration for revocation of conditional release. And I would say, I specifically wanted to address the point that you brought up when it says, and an explicit term of this release. But the subsection above that, 4243F2A, outlines other conditions, I would say. It actually says it's a treatment regimen here. You have to impose this treatment regimen, and as an explicit condition, tell them to comply with this treatment regimen. So every individual will have a different kind of treatment, a different kind of mental illness. They would have to have different conditions imposed, so it wouldn't be possible for Congress to outline those conditions in the statute. But just because it refers back to an explicit condition of release, that they must comply with it, doesn't mean that there aren't other conditions in place. For example, Mr. Rohde was told- The answer to the very first question I ask you then would be, all these other circuits are wrong. I think they've all embraced this concept of explicit condition does not bar and implies there can be related conditions that aren't part of that regimen. Which is okay. I mean, you can be part of a lopsided minority in a circuit split. You may be right. I mean, the 11th Circuit, I mean, obviously, Mr. Rohde believes that CRAPE applies and that CRAPE has the right analysis, agrees with the 11th Circuit. And as I said earlier, Franklin points out, they agreed, the 8th Circuit, that the treatment regimen is not per se within the statute. Jane talks about all of these non-treatment conditions, but Jane, as related to almost all the conditions that weren't strictly medical, referred to another statute. They referred to other statutes that would authorize these type of conditions. In CRAPE, the government urged the 11th Circuit not to view 4243, quote unquote, so literally. And in this case, the government urged the district court below not to take a restrictive view of the statute. And I think all of those terms and all of those holdings show that the courts are stepping outside of what the strict... Can I ask you about the timing of the challenge? In the supervised release context, we say if you want to challenge a condition, you must challenge it when it's entered. You must bring the appeal and challenge that condition then. And if you wait to the revocation hearing to say that the condition that imposed was improper, as opposed to the condition in probe was not met for some reason, that that collateral attack on the prior conviction, we lack authority to consider that collateral attack. Is there any reason for us to think that that same timing mechanism doesn't apply here? So your client had conditions imposed, had the opportunity to appeal that decision, chose not to do so, and might have had good reason not to, because perhaps without this gun condition, the district court may not have released your client. You may well have come out differently on the balance of whether they were continued to be a risk or not. And so your client might have had very good reason not to appeal that gun condition at that point. But the district court made the balance at that point, including this condition, where now time has gone by and he wants to bring this collateral attack. We don't allow that in any other context that I've seen, supervised release or otherwise. Why should we permit a collateral attack in this kind of a context? Well, I think because to reach the issue about whether his revocation is appropriate, which is an important due process right of his, just like the crate court, they were faced with the same situation and determined that they... I understand. They have an argument. Is that what you're relying? I understand that argument. I don't think it's a good one, but I understand it. The footnote where they talk about the different subsections. I understand that. Is that the argument that you have? Do you want to make any other argument, I guess? I just want to make sure I understand what you would say in response to that. I'm totally fine with you just saying, yeah, I just adopt the footnote. That's all I got. But is there anything else you want to say? Well, I mean, we tried to focus on the actual revocation. And even if he didn't challenge the conditions when they were imposed, is that enough for him to now have his revocation, have his conditional release revoked because of this one factor? Wouldn't that same argument work in the supervised release condition context? Because it says you can only revoke supervised release for a violation of a supervised release condition. And your argument is, well, this wasn't a supervised release condition because it was improperly imposed. So it's not a supervised release condition because of the nature of its imposition. That's just a circular way. That seems like to me an entirely circular argument. If it was imposed as a supervised release condition, then when it comes time to revoke, we revoke as a supervised release condition because that's what the court called it, and that's what the court did. And that's all the court had the authority to do. So the crape argument in the footnote would just be flatly inconsistent with our supervised release cases. Okay. Well, I would point out here there were two other conditions listed in his petition. So I think that's faulty because two of the conditions that he allegedly violated were not conditions that were in the court's order. It was leaving the district without permission and committing a new crime. Those were not explicit conditions, and the court did reference those. Has he challenged this? Is this an issue that's before us? It's in the brief. Have you alleged that that's like an error that requires relief? I'm not sure I understand that. Well, I put the outline of all that in the briefing about the two conditions and that the only one that could be at issue is the possession of the gun because the other two were not conditions. That was part of his briefing when he asked the court to dismiss the petition, and all of that was included in briefing. And then in the order, the court at one point references, like at the end of the hearing on the revocation, the court references the, I'm sorry, I'm over time too. So if you want me to, okay. Though that at the end of the hearing, the court does reference all the conditions that were listed in the petition, even though Mr. Roney had previously objected to those conditions. All right. Thank you very much. You've got some rebuttal time. Mr. Holliday. Thank you. Good morning, and may it please the court. I'd like to start to try to capture a little bit on what Judge Richardson was talking about with restraints on liberty, but also, Judge Agee, what you were talking about in terms of sort of what the other circuits have decided in terms of Franklin, Jane, Phelps, but also I spent a good bit of time yesterday in Perkins as well. And Perkins was informative obviously coming out of this circuit about, it was a very deep dive into the history of mental health in this country and the origins of 4243 and sort of chapter 313. And that's Judge Volk's. It is. It is. It is. I learned a whole lot about mental health yesterday and sort of how we got to where we are here in the Comprehensive Crime Bill of 1984 and how this is the regime that was decided on. And as Judge Volk was reviewing all of the history of it, there's this balancing of interests that I think that comes into play. One is we have an individual who has been deprived of liberty sort of in a gradual context. Initially, it was the deprivation of the ability to have a firearm, but obviously it extends all the way up to when we're talking 4243G, someone remains institutionalized. And why do we do that? Why do we have that whole process in place? One is because in certain circumstances and in this circumstance, the defendant still poses a threat to the public. Looking at subsection F, which is revocation of the discharge, which is the section that we're focused on here because this arises in the context of revocation, specifically the listed failure to comply lists repeatedly failure to comply with the prescribed regimen of medical, psychiatric, or psychological care of treatment. The person may be arrested, et cetera, et cetera. The court shall, after a hearing, determine whether the person shall be remanded for his failure to comply with the prescribed regimen of medical, psychiatric, or psychological care of treatment. Nothing in this section that discusses conditional release references any conditions outside of failure to comply with the regimen. And so I'm specifically focused on the language of F, which seems to make no reference at all to any ancillary conditions that were placed on release and seems to conflict with the construction of the Jane line of cases with regard to E2B. How do we square that? Right, right. So when the Franklin Court, the Jane Court, and the Phelps Court were grappling with that, where the language is somewhat restricted and confining to medical, psychological, or psychiatric, they turned to principles of supervision, such as that found in 36038, which just talks about generally how the probation office has a responsibility to supervise somebody for 4243. But this isn't supervised release. This is a completely different statute, and my understanding is that they were actually promulgated sort of as a package in 3583. I mean, there are different statutes, there are different schemes. One is about supervised release, and any conditions essentially can be placed on supervised release. But this statute specifically says only certain conditions can be placed, and it's really not about super, it's about the individual's mental health. And at a minimum, those cases say the conditions have to be reasonably related to the mental illness, and I assume to the initial crime, and the initial crime in this case had nothing to do with anything violent, use of guns. They were sending letters, threatening letters, as I understand it. Is that correct? That's exactly correct. He was sending threatening letters to his attorney at the time. He was diagnosed with being delusional, and the manifestation of those delusions was often violent. These were very violent letters that he sent to his initial attorney. And presumably if he was released upon recommendation of the director of the facility, he was found no longer to have that mental health condition. And none of the allegations of violation of these conditions had to do with his mental health. The allegations had to do with possessing a weapon, which to my mind is not reasonably related to the original crime or his mental illness, and then these other conditions that were unenumerated. I think what we get to there, though, is sort of this comprehensive idea of not only are we looking out for the interests of the individual. And where does that appear in the statute, that we're not just looking out for the interests of the individual? I understand that you read it generally into the statute, but where does it appear in the language? Well, it's the balancing that you get in 4243G when you're talking about whether or not somebody still poses a physical danger to the safety of an individual or to substantial property damage or whatever. So I think that with Mr. Roney, you have somebody who suffers from delusions, has violent tendencies. These letters are threatening. But the court, after hearing to determine whether the person should be remanded to a facility on the ground that in light of his failure to comply with the prescribed regimen, medical, psychiatric, or psychological care or treatment, his continued release would create a substantial risk to property or another. So you're just reading out of the statute the phrase in light of his failure to comply. Essentially, you're asking us just to strike that out and read the sentence without that condition. Well, I go back to what's found in F2 when it as an explicit condition and where the drafters contemplated that there would be conditions outside of the medical, psychological, or psychiatric conditions. And it doesn't make sense, at least to me, that you would have as conditions of relief imposed in F2 a condition imposed that respectfully I disagree. F2B is a subsection of F2. And F2 says specifically his conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment. And then the subsection under 2 is 2B, which says order as an explicit condition of release, referencing back, I think, to F2. So you're reading, you're essentially reading that an explicit condition of release as a whole new section in the statute that is not nested within the other language of conditionality. Well, I think it's illustrative language. It's clearly language that the other circuits have found persuasive in finding that... All but the 11th. All but the 11th. Yes, clearly, all but the 11th. And even in this circuit, in the Perkins case, any conditions that were reasonably related to the underlying condition were viewed as legitimate ones. And I would say that also... How is the possession of a gun reasonably related to the original condition? It's reasonably related because of the manifestation of Mr. Roney's delusion, which was violence. He sent violent letters or threatening letters. Did he commit any violence? Was he alleged to have been violent? The... Yes, but you would have to go back to the original state conviction, the Abhand conviction, that led to the appointment of the attorney who was then subsequently threatened by Mr. Roney. Do you take the relation here... I actually don't know the answer to this, but do you take the relation here... Is the relation to the offense that he was found not guilty by reason of insanity on, or do they have to relate to his mental illness? I think it would have to be broader because... It's the mental illness in the whole, so it doesn't really matter whether it relates to the letters or not, although we might think it does here. The real question is, is like, does it relate to the reasonable treatment of this person? And this person encompasses all the things that have come before, and that might come in the future, right? Yes, and that's also where we ended up during the ultimate hearing in front of Judge Curry was when Dr. Lloyd was testifying, she talked comprehensively about sort of the treatment of Mr. Roney. Obviously, the violation was based on conduct outside of his institutionalization, but during the hearing... Do we have the transcript of the hearing where Judge Curry imposed these conditions? It's not part of the record, only the orders. Where's the reasonably relate to the in the language of the statute? Oh, it's not. So you're just again asking us to read something that's not in the plain language of the statute that Congress passed, that it's reasonably related to something, and what's the reason we relate it to? We have no idea. Well, I'm asking you to take into consideration the way the court has interpreted the statute. And the other circuits have also read in language to the statute that wasn't in the statute that was passed by Congress. And the reasonably related language is in the other statute that was passed in the same package, isn't that right? I believe so, but... So Congress knew to say reasonably related when it wanted to, but it didn't do it here. Well, Congress also knew when they drafted F-2 that they put an explicit condition rather than... As a subsection of E-2, which says his conditional release under a conditions. In the other statute that Judge Berner's asking about when it uses this term reasonably related, what is the relation there? What are the two things that are related in that statute? I'm not sure, I'm sorry. I wouldn't either, that's why I was asking you. But I think when the other courts have developed sort of a holistic way of looking at the statute, one that makes sense. Ultimately, we're trying to set up Mr. Roney and similarly situated individuals for success. And the conditions that are placed on him, the 12 conditions in 2016, the 10 that were in 2014, are in place to try to get him treated and also to avoid any further harm to the public such that he can remain without any further restrictions on his liberty. So as Judge Agee said a moment ago, under what circumstance would you have somebody who's delusional and has written threatening letters, has a state conviction for ab-hand. When he violates in 2016, he goes into a Dollar General and shoots the place up with a gun. Why would you not have a condition in place to prevent him? And he was charged, convicted, and served time for that offense. He did, he did. And not found to be delusional, nor did he plead guilty. He did not. It's interesting if you read how they got there. It was an iterative process and they were able to get him to the point of competency such that he could plead guilty. And he wasn't found to be mentally incompetent after that. He was simply found to have violated a condition that was placed on his release long before. But the subsequent crime that was using a gun and shooting up the dollar store, he was never found to be incompetent in those proceedings. He was ultimately found to be competent after an iterative process of getting him there. You know, mental health is challenging. At the point of his evaluation by Dr. Lloyd, the Dollar General crime occurred in 2016, his release is coming up in 2024. There was an evaluation of Mr. Roney in 2024 to see where he was then. So clearly before 2016, he had mental health issues. There was some period of time in 2016 where he was competent enough to plead guilty. But eight years later, when he's being evaluated to determine under the whole 4243 regime whether it's the time for him to be re-released into the public under conditions or whatever, at that point he is found to be suffering from delusions, and I think also antisocial disorder at that point as well, that there was no series of conditions. At that time, but he was subsequent to that time, released upon recommendation of the director of the facility in agreement with the court that and after that time, no longer at any time found to be suffering from delusions. But these limits that were placed, they have no time limit. They essentially, it's a lifetime sentence subject to these conditions that are possibly related, possibly not related. There's nothing in the statute that says that other conditions can be placed. Other conditions could be placed if there was a subsequent thought that he needed to be brought back in, just as they were in 2016. You know, it's a, I almost lost what I wanted to answer from you there. Unfortunately, mental health is, I'm sure you'll remind me, Judge Berner. I just wanted to know if there was a subsequent finding of delusional behavior or thoughts after he was released upon recommendation of the director of the facility and an agreement by a judge who released him, if at any time after that, there was a finding that he suffered from delusional behavior. Between 2012 and 2016. After he was released. Right, in that time period, not until he committed the crime. Thank you. And after he committed the crime, there also wasn't a finding that he suffered from delusion. Long enough to get the guilty plea, it seems. Was there ever a finding that he suffered from delusional behavior after he was released by the judge at the recommendation of the director of the facility? He succeeded under the program between 2012 to 2016. Was there ever a finding, yes or no? Not in that time period. If it had been yes, he would have been revoked at that time. But here we are in 2024. Can I come back to this question of what it means to be a regimen of medical psychiatric or psychological care or treatment? Perkins sort of instructs us that this is sort of an iterative process with the doctor and the district court. It seems as if the doctor has to agree and the judge has to agree on what those conditions are in order to determine that he can be safely released. And so I guess sort of what I'm trying to get at is it seems like in this context, what the doctor and the judge reach at the hearing, we don't have a transcript for, is that the gun is a condition that's being imposed or the lack of possession of a gun is a condition that's being imposed that is part of this balance of he can get out, but if he's going to get out, he can't have a gun, among other things. Tell me why we think that sort of lesser restraint on liberty, because another option would have been to say, we think he continues to be a danger, and so we're going to leave him in. Why is that lesser restraint on liberty sort of not part of treatment and care, where like institutionalization is part of treatment and care? It seems like once we sort of acknowledge that restraints on liberty can be part of treatment and care, certainly they can. We can totally institutionalize him, right? We can put him in a group home, which is like sort of a version of institutionalization, but with softer restraints on liberty, that why this like other restraint of liberty, that is, like you can't have a firearm, couldn't be considered part of sort of a, you know, quote, unquote, prescribed regimen of medical care and treatment. Well, it does seem like, again, they're trying to set Mr. Rooney up so that he could have been And so with the guidance of the medical health professional who came into the court, I'm assuming that the procedure that was followed back in 2014 and 2016 was the same as we followed in 2024, which is the judge sets conditions or makes, made her determination based on the advice and counsel of the medical health professional. And there's another medical term, titration, where we build up toward ultimately if it needs to be institutionalization, that's what it is. But there are measures short of that, at least it was thought in 2012, where a restriction on liberty, but a limited restriction on his liberty, would suffice. And that was that restriction on his ability to have a firearm. Can you comment just briefly on the sort of last point? In 2012, you might well imagine that an individual would readily agree to a condition of not possessing a firearm in order to, if that would be what would tip the balance. We typically require challenges to conditions in the supervised release context and otherwise to be raised at the time of that order. And these sort of collateral attacks at the time of revocation are generally not permitted. Do you have a take on that? I note that you haven't argued it. So there's probably a waiver problem, but bracket that for a minute. Is that the right way to think about collateral attacks on these types of treatment conditions? Well, it did come up when we were talking through this at the office. And obviously had we raised it, there would be a waiver argument that because Mr. Roney did not challenge that condition at the time it was imposed in 2014, again in 2016, that he's waived the challenge to it. But again, I guess to come back to what we have argued, it is reasonably related to all the conditions that were put on Mr. Roney to try to ensure that he remained at liberty so long as he was not an unreasonable threat to the physical well-being of individuals or property. And unfortunately, he did not succeed. All right. Thank you very much, Mr. Trialday. Ms. Albrow, you've got something else? Ms. Albrow. Thank you, Your Honors. I just wanted to address a bit about what Judge Berner brought up that I didn't get to in my opening, and that's about the supervised release statute. It was, in fact, considered and was part of the 1984 Comprehensive Crime Act. And it, on five different occasions, refers to order as an explicit condition of supervised release. So it authorizes the court to impose other conditions as well. So even though it gave some guidance on specific conditions that could be imposed under the supervised release regime, it did not limit the court on what it could impose. It provided guidance and said, you can impose other supervised release conditions. So under strict construction, we would assume that Congress purposely left that out of the mental health statute. And as indicated, 4543 is not, a conditional release revocation is not based solely on dangerousness. And there are other statutes in place to address those kinds of issues without reading into the statute something that it doesn't say. And one of those things is prosecution. And as I mentioned earlier, because he's been deemed a mental incompetent and Mr. Roney was a felon, he also could have been prosecuted under 922G without adding, you know, you can't have a gun as part of his mental health treatment conditions. He also was prosecuted in North Carolina and was subject to numerous supervised release conditions, including mental health treatment, medication, what have you. So when he was released, instead of pursuing relief under an eight-and-a-half-year-old petition about his possession of a gun, he could have just gone on supervised release. He also could have been, a proceeding in North Carolina could have been brought under 4246, which Dr. Lloyd's examination and evaluation in the record is more geared to that type of proceeding. So it doesn't mean that someone with Mr. Roney's condition is necessarily going to be out in the public being a hazard or a danger. If there are other concerns, there are many, many other statutory schemes which can address that. Also, do you, what about supervision? Is someone that's released under 4243 subject to supervision where they need to check in? Is that supervision sort of part of what we describe here as a regimen of medical, psychiatric, and psychological care or treatment? I mean, the sort of like, you know, the supervision that exists to sort of ensure compliance with the things that are supposed to be taking place. I hope I'm answering your question correctly. My understanding, I believe I saw in the record, although I can't point to exactly where, I think it was a question that Judge Curry asked the doctor. The doctor thought that the supervised release would be suspended if he was, if his conditional release was revoked. No, no, I mean, when he's released under 4243, does he have someone who is supervising him, a person? The probation officer. Like a probation officer. Right, which I think actually is part of the problem because the probation office, unfairly to them, they aren't trained necessarily. All right, but bear with me for a minute. I understand that's a different point. So the probation officer, is the use of a probation officer consistent with the, you know, prescribed regime of medical care and treatment? I mean, is that, I mean, because your argument might say you can't have a probation officer because the probation officer is not a doctor, right? And so maybe you, are you arguing that that is beyond what can be imposed by the district court? I didn't make that argument. And so I thought that that was your answer, that you can do supervision, right? I mean, they can supervise someone that's a 4243 releasee. I didn't address that, so I couldn't really answer that. So if the, I mean, it seems like it would be normal to have a condition that would say, you know, once a week you have to meet with the psychologist. And if they fail to meet with the psychologist, they could be revoked. That could be put in a petition for potential revocation, correct? I'm out of time. Does anyone have further questions? All right, thank you very much. Thank you, your honor. We see that you have been court assigned and we appreciate your undertaking that task. And we thank both counsel for their arguments. We will come down and greet counsel and go on to our next case.
judges: G. Steven Agee, Julius N. Richardson, Nicole G. Berner